UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------- x
FLORENTINA BARROGA-HAYES,

                  Plaintiff,

         - against –

SUSAN D. SETTENBRINO, P.C. A/K/A
SUSAN D. SETTENBRINO, ESQ. A/K/A
SUSAN D. SETTENBRINO AND UNITED
NATIONS FEDERAL CREDIT UNION,

                  Defendants.
--------------------------------------------------------- x

**MEMORANDUM & ORDER**

10 CV 5298

DEARIE, District Judge.

Pro se plaintiff, Florentina Barroga-Hayes, brings federal and state law claims alleging that her former attorney and her credit union violated her financial privacy. These allegations all originate from an attorney's fee dispute between plaintiff and her former attorney in a custody matter, Susan Settenbrino ("Settenbrino"), during which Settenbrino issued a *subpoena duces tecum* demanding that the United Nations Federal Credit Union ("UNFCU") release plaintiff's financial documentation and the UNFCU subsequently complied. Plaintiff claims that Settenbrino's issuance of the *subpoena duces tecum* and UNFCU's compliance with its demands, violated her rights under the Right to Financial Privacy Act ("RFPA"), 12 U.S.C § 3401, et seq., the Graham-Leach-Bliley Act ("GLBA"), 15 U.S.C. § 6801, et seq., the Federal Credit Union Act ("FCUA"), 12 U.S.C. § 1751, et seq., the False Claims Act ("FCA"), 12 U.S.C. § 1751, et seq., and the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, et seq. In addition, plaintiff alleges various pendent state law claims, including violations of the New York Deceptive Practice and Business Law Statutes, among other laws.

Defendants move for dismissal pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Because no express or implied private right of action exists to enforce the GLBA or FCUA, defendants' motions to dismiss those claims are granted for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1). Because plaintiff has failed to state a claim upon which relief can be granted under the RFPA, FCA, or ERISA and because neither defendant is a "state actor" under Section 1983, defendants' motions to dismiss those claims are granted under Fed. R. Civ. P. 12(b)(6). In the absence of any viable federal law claim, I decline to exercise supplemental jurisdiction, and, therefore, dismiss plaintiff's state law claims <u>without</u> prejudice.

## I. BACKGROUND

The pertinent allegations are as follows. Plaintiff, a citizen of the Philippines, began working at the United Nations in the mid-1970s and has been a member-owner of the UNFCU since 1975. ECF Docket # 1, Complaint ("Compl.") ¶¶ 10-11. Plaintiff retired from the UN on June 30, 2005, although plaintiff continued on as a member-owner of the UNFCU at least up until the filing of the instant lawsuit. Compl. ¶ 30. Plaintiff became a permanent resident of the United States on March 8, 2006. Id.

A. Settenbrino's Representation of Plaintiff

In March 1997, plaintiff lost custody of her son and in mid-1998 was divorced. Compl. ¶¶ 15, 18. After twice petitioning unsuccessfully for custody of her son, plaintiff sought out Settenbrino's services. Compl. ¶¶ 20-25, 28. Plaintiff hired Settenbrino on August 10, 2005 at a rate of $350 per hour, and paid a cash advance of $30,000, although "[f]or four (4) months, the Law Firm was dormant on my case." Compl. ¶¶ 32-33, 37.

On December 12, 2005, following a report from plaintiff's son concerning a particularly troubling incident with his father, plaintiff reached out to Settenbrino to inquire about the status

2

of the case. Compl. ¶ 34. From December 13 to 15, 2005, Settenbrino requested plaintiff's help in drafting an Order to Show Cause in the custody matter, including marking exhibits and faxing documents, "so that the retainer's fund not depleted [sic] quickly." Compl. ¶ 36. The Order to Show Cause was filed on December 16, 2005, and four days later, Settenbrino sent plaintiff a billing statement of $28,902 for eighty-six hours of work between December 6 and 16, 2005 and demanded another cash advance, this time in the amount of $60,000. Compl. ¶¶ 38-40. Over the course of the next several weeks, plaintiff cobbled together funds, including a signature loan with the UNFCU for $30,000, and paid Settenbrino an additional $50,000 in early January 2006. Compl. ¶¶ 41-44. On March 13, 2006, Settenbrino demanded an additional $40,000 cash advance. Compl. ¶ 46.

Over the next month, while plaintiff attempted, unsuccessfully, to obtain additional financing, Settenbrino allegedly "berated" and "verbally abused" plaintiff about her inability to pay, and in April 2006, threatened not to draft a required reply affidavit in the custody matter, although Settenbrino ultimately did so any way. Compl. ¶¶ 47-48, 52-53. After a court appearance in May 2006, Settenbrino informed plaintiff that she would forgive any fees in excess of $80,000 on the condition that plaintiff write a flattering termination letter and cite plaintiff's inability to pay as the sole reason for termination. Compl. ¶ 56. On May 4, 2006, plaintiff terminated Settenbrino's services in accordance with this verbal agreement. Compl. ¶ 57.

B. Fee Dispute Arbitration and Issuance of Subpoena

On December 6, 2007, plaintiff filed a "Client's Request for Fee Arbitration" with the Richmond County Bar Association for the return of $50,000 in attorney's fees. Compl. ¶ 61. On September 11, 2008, the arbitration panel found in favor of plaintiff and ordered Settenbrino to

return $25,000. Compl. ¶ 62. On October 10, 2008, Settenbrino filed an Order to Show Cause to vacate the arbitration award. Compl. ¶ 63.

On November 25, 2008, in connection with the motion to vacate, Settenbrino issued—herself, without court intervention or approval—a *subpoena duces tecum*[1] to the UNFCU demanding "the following documents: any and all correspondence, including but not limited to notes, letters, reports, applications, memorandums, and records relating to [plaintiff] from August 1, 2005 to present."[2] ECF Docket # 1 at 25-26, Exhibit ("Exh.") 3, Subpoena at 2.

Between December 11, 2008 and July 8, 2009, the UNFCU complied with the subpoena and, in fact, provided financial information beyond the scope of the subpoena, concerning transactions both before and after August 2005 through November 25, 2008, the date-range provided for in the subpoena. Compl. ¶¶ 79-80.

---

[1] Although plaintiff's name and address were included at the bottom of the subpoena as a "cc," see Subpoena at 2, plaintiff claims not only that she was not served with a copy of the subpoena, but also that Settenbrino "consciously, knowingly, and intentionally OMITTED to serve upon me a copy of the subpoena" to "deceive and trick the Credit Union, and make believe I was already notified and aware of the subpoena." Compl. ¶ 70. Accepting plaintiff's allegations as true, Settenbrino issued a flawed subpoena by failing to serve a copy on plaintiff, thereby foreclosing plaintiff's ability to move to quash the subpoena. See N.Y. C.P.L.R. 2103(e) (McKinney 2009) ("Each paper served on any party shall be served on every other party who has appeared . . . ."); Matter of M.J., 673 N.Y.S.2d 554, 556 (N.Y. Fam. Ct. 1998) ("The rationale for [N.Y. C.P.L.R. 2103(e)] is that a party who has appeared is entitled to be kept abreast of all developments in the litigation regardless of whether they concern him directly.") (internal quotations omitted). Nonetheless, whether the subpoena was actually sent to plaintiff, whether the use of the documents subpoenaed were indeed relevant to the fee dispute, and whether the information gleaned from the produced documents were subsequently used in an improper or illegal manner, among other questions, are all matters of state law. Because, as will be discussed below, all the federal claims must be dismissed either under Rule 12(b)(6) for failure to state a claim upon which relief can be granted or Rule 12(b)(1) for lack of subject matter jurisdiction, the Court declines to exercise supplemental jurisdiction to reach the substance of these issues.

[2] Plaintiff refers to Settenbrino's subpoena as a "sham subpoena" throughout the complaint. First, plaintiff challenges Settenbrino's ability as party to the underlying fee dispute action to issue such a subpoena without court order. Compl. ¶ 69, 71. New York law makes clear, however, that "[s]ubpoenas may be issued without a court order by . . . an attorney of record for a party to an action." N.Y. C.P.L.R. 2302 (McKinney 2011). Settenbrino was the attorney of record for herself, a "party to an action," and, therefore, "ha[d] a presumptive right to issue a subpoena." Del Vecchio v. White Plains Unit, 408 N.Y.S.2d 802, 804 (N.Y. App. Div. 1978) (citing N.Y. C.P.L.R. 2302). In fact, the power of Settenbrino to issue a subpoena was greater than that of the arbitrators in her underlying case: "[T]he right of an attorney to issue compulsory process is less subject to limitation than that of an administrative agency or commission. . . . An attorney . . . may issue the process as of right." Leibowitz v. State, 406 N.Y.S.2d 676, 678 (N.Y. Ct. Cl. 1978). Second, plaintiff challenges the relevance of the underlying documents, yet "[e]ven as to subpoena duces tecum there is no requirement that it show in what manner the requested documents are relevant . . . ." Del Vecchio, at 804; see also id. ("[O]n a motion to quash, the subpoena [duces tecum] will be sustained unless it calls for documents which are utterly irrelevant to any proper inquiry.") (internal quotations omitted).

4

In March 2009, plaintiff's arbitration award was vacated and remanded to the arbitration panel. Compl. ¶ 86. In March 2010, a new arbitration panel awarded plaintiff $44,350 and again, Settenbrino moved to vacate the award. Compl. ¶ 122-23. In July 2010, the New York Supreme Court denied Settenbrino's motion to vacate and granted plaintiff's motion to confirm the $44,350 arbitration award. Compl. ¶ 128. In September 2010, the Appellate Division denied Settenbrino's motion to stay enforcement of the Supreme Court's July 2010 order. Compl. ¶ 130.

Between July 9, 2009 and September 7, 2010, Settenbrino allegedly used the financial records obtained from UNFCU in court papers to allege "extortion, conspiracy, money-laundering, misconduct, bad faith, etc. – but NOT to establish the reasonableness of the disputed attorney's fees." Compl. ¶ 118. Settenbrino also allegedly disseminated the financial records to plaintiff's "adversary counsel in the custody case."[3] Id.

Plaintiff filed this complaint pro se on November 17, 2010, ECF Docket # 1, and on April 11, 2011, defendants separately moved to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and (6). ECF Docket # 19, 21.

## II. DISCUSSION

A. Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), the Court may dismiss a complaint for "fail[ure] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding such a motion, the Court "must accept as true all of the factual allegations set out in the plaintiff's complaint, draw inferences from those allegations in the light most favorable to plaintiff, and construe the complaint liberally." Gregory v. Daly, 243 F.3d 687, 691 (2d Cir.

---

[3] According to both the complaint and an attached transcript, Settenbrino attended plaintiff's custody proceedings in April 2010, long after she had been relieved as counsel, and was unruly. After castigating Settenbrino for "hijacking this proceeding," the judge ordered Settenbrino to leave the courtroom. Compl. ¶ 125; ECF Docket # 1, Exh. 6 at 99-106, Transcript.

5

2001) (internal quotations omitted). "For purposes of this rule, the complaint is deemed to include any written instrument attached to it as an exhibit, or any statements or documents incorporated in it by reference." Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002) (internal quotation marks omitted); see also Fed. R. Civ. P. 10(c). The Court should dismiss a claim only where "it appears beyond a doubt the plaintiff can prove no set of facts in support of [the] claim[] which would entitle [him] to relief." Gregory, at 691 (citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).

"This rule applies with particular force where the plaintiff alleges civil rights violations or where the complaint is submitted *pro se*." Chance v. Armstrong, 143 F.3d 698, 701 (2d Cir. 1998). "A *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (internal quotation marks omitted). As a result, "*pro se* submissions must be construed liberally and interpreted to raise the strongest arguments that they suggest." United States v. Akinrosotu, 637 F.3d 165, 167 (2d Cir. 2011) (internal quotations omitted).

B. Federal Claims

1. Right to Financial Privacy Act

Plaintiff alleges that both Settenbrino and the UNFCU violated various privacy provisions embedded in the RFPA through Settenbrino's improper acquisition and UNFCU's improper disclosure of plaintiff's financial information. Compl. ¶¶ 183-211. As both defendants point out in their motions to dismiss, however, the RFPA only governs and protects against the disclosure of financial records to the *federal government*. See ECF Docket # 19, Memorandum of Law Accompanying UNFCU's Motion to Dismiss ("UNFCU Mem.") at 6-7; ECF Docket # 22, Memorandum of Law Accompanying Settenbrino's Motion to Dismiss at 7-9.

The central provision of the RFPA provides that "no *Government authority* may have access to or obtain copies of, or the information contained in the financial records of any customer from a financial institution . . . ." 12 U.S.C. § 3402 (emphasis added). "Government authority," in turn, is defined as "any agency or department of the United States, or any officer, employee, or agent thereof."[4] 12 U.S.C. § 3401(3). The Second Circuit has adopted a decidedly narrow view of the protections afforded by the RFPA, holding, for example, that the RFPA did not apply even to an Executive Assistant United States Attorney, who was not "specifically acting in that capacity when he obtained" private financial information through a court-ordered subpoena. Young v. United States Dept. of Justice, 882 F.2d 633, 636 (2d Cir. 1989); see also Irani v. United States, 448 F.3d 507, 510 (2d Cir. 2006) (recognizing that while the RFPA "was 'intended to protect the customers of financial institutions from unwarranted intrusion into their records,'" it also was passed to "'permit[] legitimate law enforcement activity.'") (quoting H.R. Rep. No. 95-1383 (1978), reprinted in 1978 U.S.C.C.A.N. 9273, 9305).

Accordingly, both federal and state courts in this and other circuits have repeatedly denied RFPA claims involving disclosure of financial information to *state* authorities and agencies. See, e.g., Young v. United States Dept. of Justice, No. 87 CIV. 8307 (JFK), 1988 WL 131302, at *3 (S.D.N.Y. Nov. 28, 1988) (Keenan, J.), aff'd and modified on other grounds by 882 F.2d 633 (2d Cir. 1989) ("[The RFPA] restricts the *federal government's* access to customer records for use in investigations conducted by the United States.") (emphasis added); Glig, Inc. v. Burgher-, No. 008610/04, 2004 WL 2239726, at *3 (N.Y. Sup. Ct. Sept. 29, 2004) ("Petitioner

---

[4] Although regulated by the federal government, the UNFCU, a not-for-profit, democratically controlled financial cooperative, is not an arm of the federal government. See San Francisco Arts & Athletics, Inc. v. U.S. Olympic Comm., 483 U.S. 522, 544 (1987) ("Even extensive regulation by the government does not transform the actions of the regulated entity into those of the government."); Jesinger v. Nev. Fed. Credit Union, 24 F.3d 1127, 1132 (9th Cir. 1994) ("[T]he slight degree of government involvement in the business of federal credit unions does not warrant applying Constitutional requirements to these democratically controlled, nonprofit cooperatives.").

fails to note that the RFPA by its terms applies only to agencies and departments of the *Federal government* and does not apply to state authorities. The agency involved in this action is a state agency, not the U.S. government. In that respect, the protections afforded by the above act are not applicable.") (internal citations omitted) (emphasis added); Matter of Grand Jury Appls. for Court-Ordered Subpoenas & Nondisclosure Orders-December 1988 Term, 536 N.Y.S.2d 939, 943 (N.Y. Sup. Ct. 1988) (holding that RFPA does not bind banks from releasing financial records in response to subpoena from state authorities, as opposed to federal authorities); accord Wright v. Liguori, 445 Fed.Appx. 469, 469 (3d Cir. 2011) (affirming grant of summary judgment because RFPA by its terms only applies to the federal government); Easter v. Nev. State Bank, 58 Fed.Appx. 355, 355 (9th Cir. 2003) ("The district court properly dismissed the . . . action because the RFPA does not apply to state and local governments."); Ismail v. Old Kent Bank & Trust Co., 893 F.2d 1334, 1334 (6th Cir. 1990) ("The RFPA restricts the ability of the *federal government* to obtain access to an individual's financial records.") (emphasis added); Nuby v. South Boston Sav. Bank, 187 F.3d 622, 622 (1st Cir. 1998) (affirming dismissal as the RFPA "does not apply to appellant's situation because it pertains only to *federal* agencies") (emphasis in original).

Because plaintiff has not alleged that the federal government gained "access to or obtain[ed] copies of . . . [plaintiff's] financial records," 12 U.S.C. § 3402, as a result of any act by either of the defendants, her claim under the RFPA must fail as a matter of law. Defendants' motions to dismiss plaintiff's claims under the RFPA are, therefore, granted.

### 2. Graham Leach Bliley Act

The GLBA was enacted to "provid[e] consumers with new protections with respect to the transfer and use of their nonpublic personal information by financial institutions." H.R. Conf.

Rep. 106-434 (1999), 106th Cong., 1st Sess. 1999, 1999 U.S.C.C.A.N. 245, 265. Accordingly, the GLBA sets forth both "affirmative and continuing obligation[s]" on the part of financial institutions like the UNFCU to "respect the privacy of its customers and to protect the security and confidentiality of . . . nonpublic personal information," 15 U.S.C. § 6801(a), as well as criminal penalties to prevent private individuals, like Settenbrino, from "obtain[ing] . . . customer information of a financial institution" through fraudulent means. See 15 U.S.C. §§ 6821(a)(3); 6823(a).

The Court, however, cannot reach the merits of whether either of the defendants violated the GLBA because the statute provides no express or implied right of action. By its own terms, the GLBA makes clear that the statute and related regulations "*shall be enforced* by the Bureau of Consumer Financial Protection, the Federal functional regulators, the State insurance authorities, and the Federal Trade Commission with respect to financial institutions and other persons subject to their jurisdiction under applicable law . . . ." 15 U.S.C. § 6805(a) (emphasis added). As "Congressional intent is the keystone as to whether a federal private right of action exists[,] . . . [w]ithout a showing of congressional intent, a cause of action does not exist . . . ." Cohen v. Viray, 622 F.3d 188, 193 (2d Cir. 2010) (quoting Bellikoff v. Eaton Vance Corp., 481 F.3d 110, 116 (2d Cir. 2007)).

Courts in this circuit and elsewhere have all come to the same conclusion: Congress made clear that no private individual may seek to enforce the GLBA's provisions. See, e.g., Rezende v. Citigroup Global Mkts., Inc., No. 09 Civ. 9392(HB), 2010 WL 4739952, at *5 (S.D.N.Y. Nov. 18, 2010) (Baer, J.) (dismissing claim under GLBA for improper disclosure of private financial information by plaintiff's bank to attorneys for private corporation because "the GLBA does not provide for a private right of action."); Farley v. Williams, No. 02-CV-0667C(SR), 2005 WL

3579060, at *3 (W.D.N.Y. Dec. 30, 2005) ("[A] private right of action does not exist on behalf of an individual (such as plaintiff) claiming harm as the result of a financial institution's failure to comply with the GLBA's privacy provisions."); Menton v. Experian Corp., No. 02 Civ. 4687(NRB), 2003 WL 21692820, at *3 (S.D.N.Y. July 21, 2003) (Buchwald, J.) (denying motion to amend complaint to add claim under GLBA because "the addition of such allegations would be futile as the GLBA does not provide for a private right of action"); Dunmire v. Morgan Stanley DW, Inc., 475 F.3d 956, 960 (8th Cir. 2007) (finding that no private right of action exists for alleged violations of the GLBA and citing cases).

Where a district court finds that an act of Congress provides no private right of action, there is "no basis for judicial review . . . and [a claim is] properly dismissed for lack of subject matter jurisdiction." Shahid v. Brooklyn Legal Servs. Corp., 114 Fed.Appx. 35, 36 (2d Cir. 2004); see also Barbara v. New York Stock Exch., Inc., 99 F.3d 49, 54 (2d Cir. 1996) ("The lack of a private right of action counsels against a finding of federal question jurisdiction.").

The defendants' motions to dismiss plaintiff's claims under the GLBA are, therefore, granted for lack of subject matter jurisdiction.[5] Fed. R. Civ. P. 12(b)(1).

### 3. Federal Credit Union Act

Plaintiff alleges that the UNFCU violated 12 C.F.R. § 716, et seq., one of the federal regulations implementing the GLBA and the FCUA.[6] Compl. ¶¶ 242-253. Again, however,

---

[5] Although plaintiff's claims are properly dismissed because there is no private right of action under the GLBA, violations of the GLBA could still give rise to liability under Section 1983. See Chan v. City of New York, 1 F.3d 96, 102-03 (2d Cir. 1993) ("The fact that a statute conferring substantive rights does not itself give its beneficiaries a private right of action to enforce it does not mean that the beneficiaries are without a private remedy. . . . 42 U.S.C. § 1983 may be available as a vehicle for remedying violations of federal statutes as well as constitutional violations. And unlike the inquiry into whether a substantive statute confers a direct private right of action, the § 1983 inquiry begins with a presumption in favor of the right to bring suit . . . .") (internal citations omitted). For reasons discussed in greater detail, infra Part II.B.6, however, plaintiff's Section 1983 claims must be dismissed because neither Settenbrino nor the UNFCU is a "state actor."

plaintiff's claims must be dismissed for lack of subject matter jurisdiction as neither the regulations, nor their statutory bases, the FCUA or GLBA, provide an express or implied private right of action.

The "majority [of circuits] have determined that where a regulation's enforcing statute confers no federal right, the regulation alone cannot create a right enforceable under § 1983." D.D. ex rel. V.D. v. New York City Bd. of Educ., 465 F.3d 503, 513 (2d Cir. 2006) (collecting cases); see also Fishman v. Daines, 743 F.Supp.2d 127, 143 (E.D.N.Y. 2010) (Bianco, J.) ("[I]f the statute itself does not create a right, federal agencies have no authority to independently create such a right through their regulations."). The Court has already held, like every other court to address the issue, that the GLBA does not provide a private right of action, either express or implied. That leaves the FCUA. Because it is undisputed that the FCUA by its terms does not provide an express right of action, the Court must determine whether the FCUA provides an implied right of action.

The Supreme Court has enumerated four factors to determine whether an implied right of action exists:

> First, is the plaintiff one of the class for whose especial benefit the statute was enacted,-that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? And finally, is the cause of action one traditionally relegated to state law, in an area basically of concern to the States, so that it would be inappropriate to infer a cause of action based solely on federal law?

Cort v. Ash, 422 U.S. 66, 78 (1975) (internal quotations omitted). Even assuming that the first, third, and fourth factors apply in this case, plaintiff's claim fails under the second. That is, there

---

[6] Plaintiff also alleges a violation of 12 C.F.R. § 792.40, but later in her Memorandum in Opposition to the UNFCU's Motion to Dismiss concedes that the regulation does not apply to the fact circumstances of her case. See UNFCU Opp. Mem. at 25 ("With regard to 12 C.F.R. § 792.40, the claim ruefully illustrates my lack of legal learning, and I'm sorry for the misinterpretation.").

is no "indication [in the FCUA] of legislative intent, explicit or implicit, either to create such a remedy or to deny one." Id.

First, although 12 C.F.R. § 716, et seq. covers issues pertaining to the privacy of consumer financial information, there is nothing in the FCUA that relates in any way to financial privacy or disclosure or nondisclosure of nonpublic financial information. The disclosure provisions of Section 716 thus were apparently founded entirely upon, and parallel to a large extent, the language in the GLBA, which again, provides no private right of action.

Second, the absence of any express right of action coupled with the fact that the FCUA created and endowed its own administrative agency, the National Credit Union Administration, with broad enforcement authority to respond to violations of the Act by federal credit unions, counsels against implying a private of right of action. See 12 U.S.C. §§ 1752a (establishing NCUA), 1766 (establishing powers of NCUA), 1784 (setting forth specific powers of NCUA to examine credit unions), 1786 (setting forth various tools of NCUA to respond to violations of FCUA); Grand Union Mount Kisco Emps. Fed. Credit Union v. Kanaryk, 848 F.Supp. 446, 452-53 (S.D.N.Y. 1994) (Tenney, J.) ("[T]he comprehensive statutory scheme [of the FCUA] bears no trace of a mechanism for the private enforcement of regulatory provisions, while at the same time providing in several places for appropriate action to be taken by the NCUA to correct violations by federal credit unions or their officers. . . . The lack of any statutory means to enforce a private right of action, read in light of the extensive administrative remedies provided . . . provide[s] strong evidence that Congress intended the administrative remedy to be exclusive.") (internal quotations and citations omitted).

Other courts in and outside of this circuit have similarly found that the FCUA does not provide for a private right of action. See, e.g., Luczaj. v. Bd. of Dirs. Of Polish & Slavic Fed.

Credit Union, No. 10 Civ. 4070(BMC), 2010 WL 3767881, at *1 (E.D.N.Y. Sept. 16, 2010) (Cogan, J.) ("[T]he FCUA does not create a private or implied right of action."); Smith v. Dearborn Fin. Servs., Inc., 982 F.2d 976, 979-80 (6th Cir. 1993); Ridenour v. Andrews Fed. Credit Union, 897 F.2d 715, 719-21 (4th Cir. 1990); Barany v. Buller, 670 F.2d 726, 729-30 (7th Cir. 1982); Acciard v. Whitney, No. 2:07-cv-476-FtM-36DNF, 2010 WL 6813952, at *3 (M.D. Fla. Sept. 17, 2010); Sly v. DFCU Fin. Fed. Credit Union, 443 F.Supp.2d 885, 891 (E.D. Mich. 2006).[7]

UNFCU's motion to dismiss plaintiff's claims under the FCUA is, therefore, granted for lack of subject matter jurisdiction.[8] Fed. R. Civ. P. 12(b)(1).

### 4. False Claims Act

Plaintiff alleges that Settenbrino violated the FCA. Compl. ¶¶ 141-171. As the plaintiff herself concedes in her Memorandum in Opposition to Settenbrino's Motion to Dismiss, however, the FCA does not apply under any theory of law to the instant matter. ECF Docket # 17 at 23. To plead a violation of the FCA, the plaintiff "must show that defendants (1) made a claim, (2) to the United States government, (3) that is false or fraudulent, (4) knowing of its falsity, and (5) seeking payment from the federal treasury." Mikes v. Straus, 274 F.3d 687, 695 (2d Cir. 2001). Because plaintiff has failed to allege at least three of the five required elements of a violation of the FCA, Settenbrino's motion to dismiss for failure to state a claim is granted. Fed. R. Civ. P. 12(b)(6).

---

[7] Likewise, courts have repeatedly rejected the invitation to find the existence of federal common law under the FCUA. See, e.g., Luczaj, 2010 WL 3767881 at *2 (rejecting argument that a "uniquely federal interest" exists in the "uniform administration of federal credit unions and enforcement of their bylaws"); Grand Union, 848 F.Supp. at 453-54 (rejecting "need for a uniform body of law in the enforcement and administration of" the FCUA and thus justification for "the creation of federal common law" under the Act)); Jesinger, 24 F.3d at 1132; Ridenour, 897 F.2d at 721-22.

[8] See supra note 5, for discussion about the availability of remedies under Section 1983.

### 5. Employee Retirement Income Security Act

To the extent plaintiff purports to bring a claim under 29 U.S.C. § 1001, et seq., for "breach of fiduciary duty" against Settenbrino, Compl. ¶¶ 168, 172, ERISA by its terms only applies to any fiduciary duty owed under "employee benefit plan[s]." 29 U.S.C. § 1003(a). Like the FCA claim, ERISA simply does not apply to the instant matter. Settenbrino's motion to dismiss for failure to state a claim under ERISA, therefore, is granted. Fed. R. Civ. P. 12(b)(6).

### 6. Section 1983

Plaintiff brings a claim pursuant to Section 1983 for violations of her rights under federal law. "It is well settled that Section 1983 does not create any new substantive rights, but merely provides a federal cause of action for violations of certain federal rights." Mrs. W. v. Tirozzi, 832 F.2d 748, 754 (2d Cir. 1987). "To state a claim for relief in an action brought under § 1983, [a plaintiff] must establish that they were deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law." Am. Mnfs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49-50 (1999) (internal quotations omitted). In this case, the Court need not reach the question of whether a violation of any federal rights occurred, because neither Settenbrino nor the UNFCU is a "state actor."

Plaintiff suggests erroneously that the issuance of and compliance with a *subpoena duces tecum*, a creature of state law, transformed Settenbrino and the UNFCU into state actors; however, "the 'mere invocation' of New York legal procedures does not satisfy the 'state actor' requirement under §1983." Cramer v. Englert, 93 Fed.Appx. 263, 264 (2d Cir. 2004) (quoting Dahlberg v. Becker, 748 F.2d 85, 92-93 (2d Cir. 1984) (dismissing Section 1983 action against a private attorney). "[S]tate action requires *both* an alleged constitutional deprivation caused by the exercise of some right or privilege created by the State [(i.e. an attorney filing a subpoena)] or by

14

a rule of conduct imposed by the state [(i.e. the UNFCU responding to a subpoena)] . . . *and* that the party charged with the deprivation must be a person who may fairly be said to be a state actor." Sullivan, 526 U.S. at 50 (internal quotations and citations omitted) (emphasis in original). Even assuming that Settenbrino issued the subpoena improperly, "[p]rivate misuse of a state statute does not describe conduct that can be attributed to the state." Dahlberg, at 90-91 (2d Cir. 1984) (internal quotations omitted) ("It is one thing to hold a State accountable for the unconstitutional acts of its legislature, but quite another to charge that State with responsibility where private parties abuse an otherwise valid state law."); see also Sullivan, at 50 ("Like the state-action requirement of the Fourteenth Amendment, the under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful.") (internal quotations omitted).

Although the UNFCU may be regulated by the federal government or the state of New York, the UNFCU is not a state actor. As the Supreme Court has consistently held, "'[T]he mere fact that a business is subject to state regulation does not by itself convert its action into that of the State for purposes of the Fourteenth Amendment.'" Sullivan, at 52 (quoting Jackson v. Metro. Edison Co., 419 U.S. 345, 350 (1974)); see also id. ("Faithful application of the state-action requirement [in cases involving "extensive state regulation of private activity"] . . . ensures that the prerogative of regulating private business remains with the States and the representative branches, not the courts."). Accordingly, courts have repeatedly held that federal credit unions are not state actors. See, e.g., id.; James v. Heritage Valley Fed. Credit Union, 197 Fed.Appx. 102, 106 (3d Cir. 2006); Smith v. Del. First Fed. Credit Union, 395 F.Supp.2d 127, 130 (D. Del. 2005); Hauschild v. Nielsen, 325 F.Supp.2d 995, 1003-6 (D. Neb. 2004).

For the foregoing reasons, defendants' motions to dismiss plaintiff's Section 1983 claims are granted for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6).

C. Pendent State Law Claims

As all parties are domiciled in New York State, the Court cannot exert diversity jurisdiction pursuant to 28 U.S.C. § 1332. Mindful that "[n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties," and because I have dismissed all of plaintiff's claims under federal law, the Court no longer retains jurisdiction over the matter and any potential state law claims are hereby dismissed without prejudice. United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966); see also 28 U.S.C. § 1367 (c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction . . . .").

It is important to note, however, that plaintiff's state law claims may still rely in part on federal law. The Court's holding that no private right of action exists under the GLBA or FCUA does not necessarily mean that the UNFCU and/or Settenbrino complied with those statutes. Defendants' potential violations of the GLBA and FCUA may very well give rise to state law claims.[9] See Grable & Sons Metal Prod., Inc. v. Darue Eng'ring & Mfg., 545 U.S. 308, 318 (2005) ("The violation of federal statutes and regulations is commonly given negligence per se effect in state tort proceedings."). The fact that a state court may have to interpret federal law to determine whether plaintiff alleges a valid state law claim, however, does not alter the Court's decision to decline to exercise supplemental jurisdiction in this matter. As the Supreme Court has held: "[I]t would . . . flout, or at least undermine, congressional intent to conclude that the federal

---

[9] As but one example, although the UNFCU may have been excused from its requirement under the GLBA to provide notice to plaintiff prior to disclosure in order "to comply with a properly authorized civil . . . subpoena," 15 U.S.C. § 6802(e)(8), plaintiff alleges that the UNFCU's disclosure went beyond that which was required by the subpoena. See Compl. ¶ 80.

16

courts might . . . exercise federal-question jurisdiction and provide remedies for violations of . . . federal statute[s] solely because the violation of the federal statute is said to be a 'rebuttable presumption' or a 'proximate cause' under state law, rather than a federal action under federal law." Merrell Dow Pharmaceuticals, Inc. v. Thompson, 478 U.S. 804, 812 (1986).

D. Leave to Amend

A court should generally not dismiss a pro se complaint "without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." Thompson v. Carter, 284 F.3d 411, 416 (2d Cir. 2002). Although Federal Rule of Civil Procedure 15(a)(2) instructs that leave to amend "should [be] freely give[n] . . . when justice so requires," Fed. R. Civ. P. 15(a)(2), "justice does not so require" if such "amendment would be futile." Xiang Li v. Morrisville State Coll., 434 Fed.Appx. 34, 35 (2d Cir. 2011); see also Goodrich v. Long Island R.R. Co., 654 F.3d 190, 200 (2d Cir. 2011). An amendment is futile "if the proposed claim could not withstand a motion to dismiss . . . ." Lucente v. Int'l Bus. Machines Corp., 310 F.3d 243, 258 (2d Cir. 2002). In this case, no amendment will change the fact that the RFPA, FCA, ERISA, and Section 1983 do not apply to plaintiff's claims to survive dismissal under Rule 12(b)(6). Likewise, no repleading will write a private right of action into the GLBA or FCUA to survive dismissal under Rule 12(b)(1). The Court cannot think of any additional avenues through which the plaintiff could bring a federal law claim against defendants. Plaintiff's request for leave to amend her complaint is, therefore, denied.

### III. CONCLUSION

For all of the foregoing reasons, defendants' motions to dismiss plaintiff's federal law claims under Rules 12(b)(1) and 12(b)(6) are granted with prejudice. Defendants' motions to

dismiss plaintiff's state law claims are granted without prejudice to file in a state court of appropriate jurisdiction. The Clerk of Court is directed to close the case.

SO ORDERED.

Dated: Brooklyn, New York
March 30, 2012

s/ Judge Raymond J. Dearie

RAYMOND J. DEARIE
United States District Judge